## UNITED STATES v. KEGLEY.

District Court, S. D. California, C. D.
Oct. 2, 1934.

Ernest Utley, Asst. U. S. Atty., of Los Angeles, Cal., for petitioner.

Jos. Lewinson and Donald Armstrong, both of Los Angeles, Cal., for respondent.

COSGRAVE, District Judge.

Carl S. Kegley is charged with misconduct involving moral turpitude and having committed acts tending to impair public confidence in the integrity and impartiality of public justice, and ordered to show cause why he should not be disbarred from practice before the United States District Court.

At the hearing it was shown that Mr. Kegley joined with others in a private investigation of the use of stolen Liberty bonds in the Los Angeles community, the purpose being to bring the facts to the attention of the proper public officials. The Los Angeles chief of

police and chief of the detective bureau had been consulted and all information obtained by his associates was imparted to Mr. Kegley from this source as well as other sources. Mr. Kegley was asked to take over the investigation.

As a result of information thus developed, suspicion was directed to one E. E. Wiley. Mr. Kegley, together with one of his associates, interviewed Mr. Wiley, charged him with complicity in the unlawful affair, and warned him that his true interest lay in a confession. Wiley expressed the opinion that he was in a dangerous situation and thereupon expressed a desire to employ Mr. Kegley as his counsel. Mr. Kegley accepted such employment and thereupon took from Wiley a signed statement of the terms of the employment and received from Wiley certain money as part of his attorney's fee. Mr. Kegley, at the hearing, made the surprising statement that when he accepted the employment he was not aware of the charge against which he had agreed to defend Wiley.

Notwithstanding his employment to defend Wiley, Mr. Kegley continued his investigation of the unlawful enterprise, participation in which Wiley was accused. He took from Wiley a statement purporting to be a confession. One Buchta was associated with him in the investigation and was in the possession of some of the information obtained from Wiley. Mr. Kegley then employed Buchta as his law clerk under a contract in writing. He thereupon assisted in the concealment of Wiley while the police were searching for him. He says his object was to create the relation of attorney and client between himself and Wiley and that his employment was only to obtain immunity for Wiley. He took the Wiley confession to the office of the Attorney General at Washington in an obvious attempt to go over the heads of the local federal authorities. The employ-

ment of Buchta, who was in no wise capable or necessary as a law clerk, was obviously to close his mouth against revealing the information he had obtained respecting Wiley. The latter, when later charged, pleaded not guilty, was tried and convicted.

Mr. Kegley, working in the public interest in uncovering crime, is commissioned by his associates to take over the investigation and does so. The fact that he was receiving no compensation did not lessen his obligation. He then accepts employment from one of the accused at the same time continuing his efforts in the public interest. Conceding that he urged Wiley to confess, the gravity of the situation is not lessened. Whether Wiley would or would not confess was something beyond his control. Associated with others, including the police in, if not in charge of, an investigation for the punishment of crime, he puts himself in a position where he must afford the protection of attorney to client to one of the supposed criminals. Such action is calculated to impair public confidence in the integrity and effectiveness of public justice.

His preposterous statement that he did not know the nature of the charge against which he was agreeing to defend Wiley, his concealment of Wiley, his attempt to go over the heads of the local authorities, state and federal, his fictitious employment of Buchta as a law clerk, all discredit his explanation of his part in this sorry business. A lawyer may not run with the hare and chase with the hounds.

However, it is doubtful if his action, discreditable though it was, reaches that degree of misconduct, and shows the degree of moral turpitude that calls for the grave judgment of disbarment.

Carl S. Kegley is suspended from practice before this District Court for a period of three years from this date.